IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| LINDA BIERLEY, | : | Judge: _____ |
| | : | |
| Plaintiff, | : | Case No:  1:13-cv-556 |
| | : | |
| vs. | : | |
| | : | |
| THOMSON REUTERS GROUP PENSION PLAN, | : | |
| | : | |
| and, | : | **COMPLAINT** |
| | : | |
| THOMSON REUTERS HOLDINGS INC., Plan Administrator of the THOMSON REUTERS GROUP PENSION PLAN | : | |
| | : | |
| | : | |
| Defendant. | : | |

_____

## NATURE OF ACTION

1.     Plaintiff Linda Bierley ("Plaintiff" or "Bierley") brings this action under 29 USC § 1132 for benefits to which she is entitled under a pension plan through her employer.

## PARTIES

2.     Bierley, at all times relevant, was a participant in a defined benefit pension plan sponsored by her employer.

3.     Defendant Thomson Reuters Group Pension Plan (the "Thomson Plan") is a "defined benefit plan" under 29 USC § 1002(35) that is also an "employee benefit pension plan" as that term is defined in 29 USC § 1002(2).

4.     Defendant Thomson Reuters Holdings Inc. ("Sponsor" or "Administrator") is the sponsor and the administrator of the Thomson Plan as those terms are used in 29 USC 1002(16)(A) and (B).

1

## JURISDICION AND VENUE

5.     This Court has jurisdiction over this action by virtue of 29 USC § 1132(e).

6.     Venue is properly laid in this Court by virtue of 38 USC § 1391(b)(2) and (3).

## FACTS COMMON TO ALL CLAIMS

7.     On or about September 1, 1979, Linda Bierley became a full-time employee of South-Western Publishing Company ("South-Western") and also became a participant in the defined benefit pension plan sponsored by South-Western (the "South-Western Plan").

8.     Bierley worked full-time for South-Western and accrued benefits under the South-Western Plan until her resignation from South-Western on or about June 18, 1982.

9.     Upon her resignation from South-Western, Bierley received a check in the amount of $784.19, representing a return of the contributions she had made to the South-Western Plan.

10.     On or about September 1, 1985, Bierley became re-employed by South-Western as a full-time employee.   On or about that same time, Bierley paid South-Western the amount of $915.68 to "buy back" her previous service so that it would count towards her total service for benefits under the South-Western Plan.

11.     In or about 1986, Thomson Reuters Holdings Inc., ("Thomson") or its predecessor, acquired South-Western and assumed the obligations as the Sponsor and Administrator of the South-Western Plan and also assumed the responsibility to pay benefits due participants and beneficiaries of the South-Western Plan.

12.     Effective January 1, 1992, South-Western employees, including Bierley, became participants in the Thomson Plan and all benefits under the South-Western Plan were frozen.

13.     On or about March 31, 1994, Bierley resigned from South-Western.

14.     In or about 1996, Bierley received a Summary Annual Report from the Administrator.   Thereafter, Bierley did not receive any further information from the Administrator regarding her pension benefits until approximately 2009, at which time she received an Annual Funding Notice for the Thomson Plan as of December 31, 2008.

15.     In 2009 or 2010, Bierley requested a benefit calculation from Aon Hewitt ("Hewitt"), the Third-Party Administrator ("TPA") of the Thomson Plan.

16.     On or about June 7, 2010, Bierley received a document entitled "Pension Option Descriptions", which described five different options available for receipt of Thomson Plan benefits.

17.     Also on or about June 7, 2010, Bierley received a document entitled "Pension Estimate Calculation Statement" (the "2010 Statement"), which incorrectly stated that her last day of employment was December 31, 2000. The 2010 Statement showed different amounts of benefits she would receive beginning on November 1, 2012, depending upon which option of payment she chose.

18.     On or about June 20, 2011, Bierley received another document entitled "Pension Estimate Calculation Statement" (the "2011 Statement"), which again incorrectly stated that her last day of employment was December 31, 2000.   The 2011 Statement contained the identical amounts of benefits she would receive beginning on November 1, 2012, depending upon which option of payment she chose, as the 2010 Statement.

19.     After receiving both the 2010 Statement and 2011 Statement, Bierley called numerous times to report the incorrect information contained in those statements.

20.     During one of Bierley's conversations with Hewitt, she was informed that Hewitt's records indicated she only had a total of five years of credited service under the

combined South-Western Plan and Thomson Plan.  Hewitt further advised Bierley that because she only had five years of credited service she would not qualify for any distributions prior to her normal retirement age.  Bierley advised Hewitt that she had over 11 years of credited service.

21.    After being informed by Hewitt that Hewitt's records indicated she only had five years of credited service, Bierley faxed documents to Hewitt on July 11, 2011, establishing that she had over 11 years of credited service.

22.    Approximately two weeks after faxing documents to Hewitt that established Bierley had over 11 years of credited service, she called Hewitt to see if her records had been corrected.  At that time, Hewitt advised her that despite the fact that the records Hewitt received did establish Bierley had over 11 years of credited service, that her benefits could not be changed.

23.     Using records and information Bierley obtained from sources other than Hewitt or the Plan Administrator, Bierley determined Hewitt's calculation of her pension benefit was understated by approximately 30 % to 40%.

24.    Upon determining that Hewitt's calculation of her pension benefit was understated, on December 31, 2011, Bierley sent a request, by certified mail, to the Plan Administrator requesting a detailed calculation of her retirement benefit as well as a copy of the South-Western Plan and the Thomson Plan (collectively the "Plan Documents").  The certified mail receipt shows that the Plan Administrator received this request for information on January 4, 2012.

25.    As of March 12, 2012, the Plan Administrator did not respond or provide any information in response to Bierley's December 31, 2011, requests.

4

26.     At some time after sending her December 31, 2011, request for the Plan Documents, Hewitt updated Bierley's information on its website to reflect her correct date of resignation, which resulted in her reported length of service increasing from 5 years to over 11 years.  Despite the fact that Hewitt corrected Bierley's length of service, there was no change made to the amount of her pension benefits.

27.     On March 12, 2012, Bierley again sent a request, by certified letter, to the Plan Administrator advising that despite her resignation date being corrected, there had been no correction to the calculation of her pension benefits and that she had still not received the Plan Documents identified in her December 31, 2011, request.

28.     At that time Bierley also informed the Plan Administrator that she would reach full retirement age on October 16, 2012, and that she intended to apply for her pension benefits as soon as her benefits were re-calculated based upon her corrected length of service.

29.     On or about March 28, 2012, the Plan Administrator sent Bierley a copy of the Summary Plan Description for the Thomson Plan.  At that time, the Plan Administrator informed Bierley that it would not count any of her service time prior to January 1, 1992 in the determination of her benefits.  Also at that time, despite the fact that Bierley had previously provided documentation to Hewitt establishing her earnings and length of employment, the Plan Administrator also informed Bierley that it lacked sufficient information to "perform an accurate pension calculation."

30.     As of March 28, 2012, the Plan Administrator had not provided Bierley a copy of the Plan Documents that she requested on December 31, 2011 and again on March 12, 2012.

31.     On July 20, 2012, Bierley wrote the Plan Administrator again requesting copies of the Plan Documents.  In addition, Bierley provided the Plan Administrator with copies of her W-

2s for each year of her employment, with the exception of 1987.  For year 1987 Bierley provided the Plan Administrator with her pay statement for the last pay period of 1987.  Bierley also provided the Plan Administrator with a spreadsheet detailing her high-five earnings history to the 60 months ending March 31, 1994 and for the high-five earnings for the 60 months ending December 31, 1991. Finally, Bierley also provided the Plan Administrator documentation establishing that she had bought-back her service between September 1979 and June 1982. Again Bierley requested a detailed benefit calculation of her pension benefits explaining that she intended to apply for her retirement benefits no later than September 15, 2012.

32.     Bireley received no response to her July 20, 2012 letter.

33.     On September 5, 2012, Bierley called Hewitt.  Bierley informed the Hewitt representative with whom she spoke that she was concerned about the lack of response from the Plan Administrator because she needed to apply for benefits in a few weeks.  The Hewitt representative provided Bierley with a "ticket number" and an email address for Thomson and instructed her to email the relevant information as soon as possible.

34.     On September 6, 2012, Bierley sent to the email address provided by Hewitt the following information: (i) December 31, 2011 correspondence; (ii) March 12, 2012 correspondence; (iii) Information Notice from Thomson; (iv) July 20, 2012 correspondence; (v) an earnings summary spreadsheet; (vi) W-2s for each year of employment; and (vii) buy-back of previous service.

35.     Bierley received no response to her September 6, 2012 email.

36.     On October 15, 2012, Bireley sent another email to the email address provided by Hewitt asking for a response to her previous email.

37.     Bierley received no response to her October 15, 2012 email.

38.    On October 31, 2012, Bierley called Hewitt in an attempt to obtain information regarding her benefit calculation that she had been trying to obtain for almost a year.  At that time, Hewitt informed Bierley that her benefits were partially from a "frozen plan" and that the relevant plan documents had not been located.  Bierley informed Hewitt she was concerned because the delay in providing her with a benefit calculation would preclude her from electing to receive a one-time lump-sum distribution.  Hewitt informed her that because her request for a benefit determination was made prior to the deadline for electing the one-time lump-sum distribution, that she would still be offered that option.

39.    Between October 31, 2012 and April 3, 2013, Bierley received no information or communications from either Hewitt or the Plan Administrator.  As of April 3, 2013, Bierley had still not received any of the information she requested on December 31, 2011 and March 12, 2012.

40.    On April 3, 2013, Bierley called Hewitt to inquire as to the status of her requests. After being put on hold, Hewitt informed Bierley that nothing had changed.

41.    On April 16, 2013, Bierley's counsel ("Counsel") contacted the legal department at Thomson seeking the information Bierley previously requested. At that time, Thomson instructed Counsel to provide a power of attorney executed by Bierley authorizing Counsel to represent Bierley with respect to Bierley's benefits under both the South-Western Plan and the Thomson Plan.

42.    Counsel provided Thomson with the requested power of attorney on April 23, 2013.

43.    On May 9, 2013, Counsel again contacted the legal department at Thomson Reuters Holdings, Inc. requesting the Plan Documents and the calculation of benefits—the

identical information Bierley had requested and that the Plan Administrator had refused to provide for almost 1 ½ years. At that time, Thomson advised Counsel that since it had just recently received the power of attorney, it would be two weeks to one month before Thomson would have any information.

44. As of May 28, 2013, Thomson did not contact or communicate with Bierley's counsel; thus, Counsel called Thomson. Thomson informed Counsel that there had been no change in the status of Bierley's request for information.

45. Thomson called Counsel on June 7, 2013, to advise that there had been no change in the status of Bierley's request for information that had now been pending for over 1 ½ years.

46. Thomson called Counsel on June 14, 2013, to advise that there had been no change in the status of Bierley's request for information that had now been pending for over 1 ½ years.

47. Thomson called Counsel on June 21, 2013, to advise that there had been no change in the status of Bierley's request for information that had now been pending for over 1 ½ years.

48. Thomson called Counsel on June 28, 2013, to advise that there had been no change in the status of Bierley's request for information that had now been pending for over 1 ½ years. At that time, Thomson also advised Counsel that it did not expect that there would be any change in the status of Bierley's request for information and that; therefore, Thomson would no longer be communicating with Counsel on a weekly basis; but rather, on a monthly basis.

49. As of the date of this Complaint neither Bierley nor Counsel has received the Plan Documents or the detailed calculation of benefits that Bierley requested on December 31, 2011.

50.     Bierley attained full retirement age as of October 16, 2012 and would be eligible to receive retirement benefits under the South-Western and Thomson Plans; however, she is unable to make a proper application for benefits due to the Plan Administrator's failure and refusal to provide complete and accurate information regarding her retirement benefits for over 1 ½ years.

51.     Bierley is excused from exhausting administrative remedies because the Plan Administrator has denied Bierley access to Plan Documents and information necessary to make a claim for benefits.   Additionally, the Plan Administrator's conduct in refusing to furnish information that it is required by law to be provided for a period of over 1 ½ years establishes that any further attempts by Bierley to obtain a resolution of her claim through the administrative process would be futile.

## FIRST CLAIM FOR RELIEF

52.     Bierley incorporates by reference the allegations contained in Paragraphs 1 – 51 as if each and every allegation were fully restated herein.

53.     Pursuant to 29 U.S.C. § 1024(b)(4), a plan administrator, upon written request by any participant or beneficiary, is required to furnish a copy of the latest updated summary plan description, the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.

54.     The Plan Documents requested in writing by Bierley on December 31, 2011, are documents that the Plan Administrator was required to furnish to Bierley.

55.     Pursuant to 29 U.S.C. § 1132(a)(1)(A)(c), the Plan Administrator was required to furnish the Plan Documents to Bierley within 30 days after her written request for those documents.

56.    The Plan Administrator failed to furnish the Plan Documents to Bierley within 30 days of her written request for those documents.

57.    The Plan Administrator's refusal to furnish the Plan Documents requested in writing by Bierley has continued for over 1 ½ years.

58.    Pursuant to 29 U.S.C. § 1132(a)(1)(A)(a) & (c), Bierley is entitled to recover up to $100 per day from the date of the Plan Administrator's refusal to provide the Plan Documents.

## SECOND CLAIM FOR RELIEF

59.    Bierley incorporates by reference the allegations contained in Paragraphs 1 – 58 as if each and every allegation were fully restated herein.

60.    On December 31, 2011, Bierley requested that the Plan Administrator provide her with a calculation of her retirement benefits.

61.    Pursuant to 29 U.S.C. § 1025(a), the Plan Administrator is required, upon written request, to provide a participant or beneficiary with documentation showing the total benefits accrued, which includes a plan participant's request for computations to support the amount of benefits stated.

62.    Pursuant to 29 U.S.C. § 1132(a)(1)(A)(c), the Plan Administrator was required to furnish the benefit calculation to Bierley within 30 days after her written request for that information.

63.    The Plan Administrator failed to furnish the benefit calculation to Bierley within 30 days of her written request for those documents.

64.    The Plan Administrator's refusal to furnish the benefit calculation requested in writing by Bierley has continued for over 1 ½ years.

65.     Pursuant to 29 U.S.C. § 1132(a)(1)(A)(a) & (c), Bierley is entitled to recover up to $100 per day from the date of the Plan Administrator's refusal to provide the benefit calculation.

### THIRD CLAIM FOR RELIEF

66.     Bierley incorporates by reference the allegations contained in Paragraphs 1 – 65 as if each and every allegation were fully restated herein.

67.     Bierley attained full retirement age as of October 16, 2012 and would be eligible to receive retirement benefits under the South-Western and Thomson Plans.

68.     29 U.S.C. § 1132(a)(1)(B) empowers a participant or beneficiary to bring a civil action to recover benefits due under the terms of a plan.

69.     Bierley is entitled to receive benefits under both the South-Western and Thomson Plans.

70.     The Plan Administrator has refused to provide Bierley the benefits to which she is entitled under the South-Western and Thomson Plans.

71.     As a participant or beneficiary under the South-Western and Thomson Plan Bierley is entitled to seek the recovery of her benefit pursuant to 29 U.S.C. § 1132(a)(1)(B).

### FOURTH CLAIM FOR RELIEF

72.     Bierley incorporates by reference the allegations contained in Paragraphs 1 – 71 65 as if each and every allegation were fully restated herein.

73.     29 U.S.C. § 1132(a)(1)(B) empowers a participant or beneficiary to bring a civil action to clarify benefits due benefits due under the terms of a plan.

74.     Bierley is entitled to receive benefits under both the South-Western and Thomson Plans.

75.     The Plan Administrator has refused to provide Bierley the benefits to which she is entitled under the South-Western and Thomson Plans and has further refused to provide any information to Bierley that the Plan Administrator is required by law to provide.

76.     As a participant or beneficiary under the South-Western and Thomson Plan Bierley is entitled to have the Court clarify her rights to future benefits under the South-Western and Thomson Plan pursuant to 29 U.S.C. § 1132(a)(1)(B).

**WHEREFORE**, the Bierley demands the following relief:

A.     Judgment in her favor against Defendants in an amount to be determined at trial for Defendants' failure to provide her with Plan Documents;

B.     Judgment in her favor against Defendants in an amount to be determined at trial for Defendants' failure to provide her with a benefit calculation;

C.     A declaration from the Court that she is entitled to benefits under the South-Western and Thomson Plans;

D.     A determination from the Court as to the nature and amount of benefits to which she is entitled under the South-Western and Thomson Plans;

E.     Reasonable attorney's fees and costs associated with this litigation;

F.     Prejudgment interest, and;

G.     Any and all other relief, equitable or legal, to which she may be entitled.

Dated:  August 9, 2013          Respectfully submitted,

                          **STRAUSS TROY**

                          /s/ Thomas P. Glass          
Thomas P. Glass (0062382)
Claudia G. Allen (00640624)
150 East Fourth Street
Cincinnati, Ohio  45202
Telephone:  (513) 621-2120
Facsimile: (513) 629-9426
tpglass@strausstroy.com
cgallen@strausstroy.com

3375292_1.doc

13